**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:22-cv-21644-KMM

MARTIN J. WALSH,
*Secretary of Labor,*

        Plaintiff,

v.

LOCAL 568, TRANSPORT WORKERS UNION
OF AMERICA, AFL-CIO,

        Defendant.

_____/

## <u>ORDER</u>

THIS CAUSE came before the Court upon cross motions for summary judgment: Defendant Local 568, Transport Workers Union of America, AFL-CIO's ("Defendant" or "Local 568") Motion for Summary Judgment, ("Defendant's Motion" or "Def. Mot.") (ECF No. 26), and Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor's ("Plaintiff") Motion for Summary Judgment ("Plaintiff's Motion" or "Pl. Mot.").  Both Parties filed responses in opposition and replies in support.[1]  The motions are now ripe for review.  For the following reasons, the Court GRANTS Defendant's Motion and DENIES Plaintiff's Motion.

---

[1] ("Pl. Resp.") (ECF No. 32); ("Def. Reply") (ECF No. 34); ("Def. Resp.") (ECF No. 30); ("Pl. Reply") (ECF No. 37).

## I.    FACTUAL BACKGROUND[2]

The facts essential to the Court's holding are not in dispute.  Plaintiff filed this suit on behalf of Local 568 member Luis Rodriguez-Serrano.[3]  Local 568 is a labor organization representing fleet service workers employed by American Airlines based in certain airports.  In December of 2018, Rodriguez-Serrano was elected President of Local 568.  Among the other members of the Executive Board (the "Board"), Rodriguez-Serrano served with Second Vice President Joe Catucci and Executive Board Member Mitchell Lieberman.

Shortly after assuming office as President, Rodriguez-Serrano created the Communications Committee.  Rodriguez-Serrano then came into possession of the passwords for Local 568's social media accounts, which were necessary to post information on those accounts and the Local 568 website.  On April 17, 2020, at a Board meeting, Lieberman moved for the Board's Recording Secretary (as well as all other Board members who requested it) to be provided with all passwords and access to the Local 568 website and social media accounts.  The motion passed by a vote of six to two.  Rodriguez-Serrano, however, did not share the passwords as directed.

In or around May 2020, Rodriguez-Serrano removed the Chair of the Communications Committee.  He also informed the Board that all passwords would be placed in a safe box, and that

---

[2]  The undisputed facts are taken from Defendant's Statement of Material Facts ("Def. 56.1") (ECF No. 27), Plaintiff's Statement of Material Facts in Opposition ("Pl. Resp. 56.1") (ECF No. 33), Defendant's Reply Statement of Material Facts (ECF No. 35), Plaintiff's Statement of Undisputed Material Facts ("Pl. 56.1") (ECF No. 29), Defendant's Statement of Material Facts in Opposition ("Def. Resp. 56.1") (ECF No. 31), Plaintiff's Reply Statement of Material Facts (ECF No. 36), and a review of the corresponding record citations and exhibits.

[3]  *Wirtz v. Hotel, Motel & Club Emp. Union, Loc. 6*, 391 U.S. 492, 498–99 (1968) (citing *Wirtz v. Loc. 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463 (1968)) ("[A]lthough Congress emphatically gave unions the primary responsibility for enforcing compliance with the [LMRDA], Congress also settled enforcement authority on the Secretary of Labor to insure that serious violations would not go unremedied and the public interest go unvindicated.").

he would notify the Board once he had the code to that safe box.  Then, on June 15, 2020, Catucci moved to suspend the Communications Committee, a motion which was passed seven to one.

At the July 22, 2020 Board meeting, Catucci brought a motion to suspend Rodriguez-Serrano from his position as President for failure to follow the directives of the Board.  On July 24, 2020, the Board provided Rodriguez-Serrano with a written statement of the reasons for his suspension.  The letter directed Rodriguez-Serrano to appear before the Board on July 31, 2020 for a hearing on the charges (hereinafter the "2020 Hearing").  The letter also stated, "This hearing will allow you the opportunity to explain your conduct to the Board as provided in Article XXI of the TWU Constitution."  Article XXI states, in relevant part: "Upon the conclusion of such hearing the Board or Council shall decide whether the evidence warrants removal of the officer and shall either reinstate the accused to his/her office or remove him/her from his/her office, or may take other appropriate action."

The 2020 Hearing took place on July 31, 2020.  Catucci chaired the 2020 Hearing and appointed Lieberman as a co-chair.  Rodriguez-Serrano was represented at the 2020 Hearing, called his own witnesses, and crossed those of Local 568.  At the hearing's conclusion, the Board found Rodriguez-Serrano failed or refused to adhere to the Board's decision and voted to remove him from office.  On August 3, 2020, Lieberman informed Rodriguez-Serrano that the Board "had decided by majority vote to remove you from your position as President of TWU Local 568 for the remainder of your term and has placed you in bad standing for a period of three (3) years."  Rodriguez-Serrano appealed the decision at several levels of the TWU apparatus to no avail.

On December 15, 2021 (approximately one year and four months later), Local 568 held an election for candidacy on the Board.  To be nominated as a candidate, a member had to obtain a petition from the Election Committee.  When Rodriguez-Serrano expressed interest in running for

President, the Election Committee Chair denied him the ability to do so because Rodriguez-Serrano was a member in bad standing. Rodriguez-Serrano submitted several pre-election protests which were denied. Rodriguez-Serrano then appealed those decisions, yet the election proceeded as scheduled, and Rodriguez-Serrano was not listed on the ballot as a candidate.

On July 7, 2022, the Board held a *de novo* hearing of Rodriguez-Serrano's charges pursuant to Article XX of the TWU Constitution before a new three-member trial committee (hereinafter the "2022 Rehearing"). Rodriguez-Serrano received notice of the hearing but chose not to participate. The trial committee found Rodriguez-Serrano guilty of the charges and recommended that he be placed in bad standing for a period of three years, retroactive to the date on which the penalty was first applied. The Local 568 Board, which was composed of all new members from the 2020 Board, voted to accept the findings and recommendations of the trial committee.

Rodriguez-Serrano subsequently exhausted his administrative remedies, which led to Plaintiff's filing of the instant Complaint. Therein, Plaintiff alleges that the 2020 Hearing was tainted by several violations of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 481-83 (hereinafter "LMRDA" or the "Act").

## II.    APPLICABLE LAW

### A.  Legal Standard.

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009)

(citation omitted).  Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment.  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  In assessing whether the moving party has met this burden, a court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party.  *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).  Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to present evidence showing a genuine issue of material fact that precludes summary judgment.  *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); *see also* Fed. R. Civ. P. 56(e).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).  But if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.  Relevant Provisions of the LMRDA.**

Congress enacted the LMRDA, in part, "to insure free and democratic elections" within labor unions in the United States.  *See Wirtz,* 391 U.S. at 496 ("Congress weighed how best to legislate against revealed abuses in union elections without departing needlessly from its long-standing policy against unnecessary governmental intrusion into internal union affairs.") (internal citations and annotations omitted).  Section 401(e) of the LMRDA, dealing specifically with union election procedure, provides in relevant part: "In any election required by this section which is to

be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and **every member in good standing**[4] **shall be eligible to be a candidate and to hold office.**" 29 U.S.C. § 481(e) (hereinafter "Section 401(e)") (emphasis added).

Section 401(e) does not, however, prevent a union from taking disciplinary action against its members. Department of Labor regulation 29 C.F.R. § 452.50 clarifies that "[s]ection 401(e) was not intended to limit the right of a labor organization to take disciplinary action against members guilty of misconduct," and a union may, "if its constitution and bylaws so provide, bar from office for a period of time any member who is guilty of specific acts," "[s]o long as such action is conducted in accordance with section 101(a)(5)" of the LMRDA. *Id.* Section 101(a)(5), in turn, provides members with three "safeguards against improper disciplinary action":

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined . . . by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

*Id.* at § 411(a)(5) (hereinafter "Section 101(a)(5)").[5]

Under LMRDA Section 101(a)(5)(C), a full and fair hearing requires "(1) the existence of 'some evidence' to support the charges made; (2) an impartial tribunal; (3) an opportunity to confront 'pertinent witnesses'; and (4) an opportunity to present evidence." *Yager v. Carey*, 910 F. Supp. 704 (D.D.C. 1995), *aff'd*, 159 F.3d 638 (D.C. Cir. 1998). In such a hearing, it is "'inherently

---

[4] Section 3(o) of the LMRDA defines a "member in good standing" as "any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization." 29 U.S.C. § 402(o).

[5] As the Court has previously explained, Section 101(a)(5)'s safeguards were required at the 2020 Hearing." *See* (ECF No. 21) at 7. Defendant does not contest this conclusion. Accordingly, the Court limits its discussion to the broader question of whether an untainted trial *de novo* in 2022 cured any potential violations which might have occurred in 2020.

improper' for a member of the union's executive committee . . . to participate as a decision-maker" where that member is "potentially biased against the accused." *Curtis v. Int'l All. of Theatrical Stage Emps., Loc. No. 125*, 687 F.2d 1024, 1030 (7th Cir. 1982).

An "untainted trial *de novo*," however, may "cure[] any prior deprivation of [a union member's] right to a full and fair hearing." *Perry v. Milk Drivers' & Dairy Emp. Union, Loc. 302*, 656 F.2d 536, 539–40 (9th Cir. 1981) (citing *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Loc. 10*, 605 F.2d 1228, 1244–45 (2d Cir. 1979)); *see also Brittain v. Am. Fed'n of Gov't Emps.*, No. 3:20-CV-92-TJC-PDB, 2021 WL 2315005, at *8 (M.D. Fla. June 7, 2021) (citing *Goodman v. Laborers' Int'l Union of N. Am.*, 742 F.2d 780, 784 (3d Cir. 1984)) ("[A] a complete *de novo* review [by an internal union appellate body] may cure the defect of a biased tribunal in an earlier proceeding.") (internal citations omitted).

To have a curative effect, the trial *de novo* "must be fair and impartial as any other trial under Section 101(a)(5) of LMRDA." *Haas v. Freight, Const., Gen. Drivers, Warehousemen & Helpers, Loc. No. 287*, 832 F. Supp. 283, 287 (N.D. Cal. 1993), *aff'd sub nom. Snyder v. Freight, Const., Gen. Drivers, Warehousemen & Helpers, Loc. No. 287*, 175 F.3d 680 (9th Cir. 1999). For instance, reliance upon—or even consideration of—the former, tainted proceeding's record will taint the *de novo* trial. *See, e.g.*, *Snyder*, 175 F.3d at 690–91; *Catlett v. Loc. 7370 of United Paper Workers Int'l Union*, 69 F.3d 254, 259 (8th Cir. 1995); *Tincher v. Piasecki*, 520 F.2d 851, 856 (7th Cir. 1975). Many other factors influence the curative potential of a *de novo* trial, including the

membership of its panel,[6] whether it more closely resembled an appeal than a *de novo* hearing,[7] and whether the member was "afforded adequate notice of" the "opportunity to present evidence."[8]

## III.   DISCUSSION

Plaintiff alleges that Defendant "violated section 401(e) . . . by disqualifying Rodriguez-Serrano, a member in good standing, from candidacy for the office of President based on a discipline imposed without providing Rodriguez-Serrano . . . a full and fair hearing, as required by section 101(a)(5)," subsection (C).  (ECF No. 1) at ¶ 90.[9]  Plaintiff avers that the decision-making panel at the 2020 Hearing was biased against Rodriguez-Serrano.  Pl. Mot. at 8–13; Pl. Resp. at 4–7.  Defendant responds that any defect in the 2020 Hearing "was cured by a later fair hearing" on July 7, 2022.  *See* Def. Mot. at 17; Def. Resp. at 23–25.  Plaintiff does not contest the factual events of this rehearing.  Pl. Resp. 56.1 at ¶¶ 41–44.  Instead, Plaintiff takes the position that the 2022 Rehearing "ha[d] no legal impact on DOL's instant claim under Title IV."  *See* Pl. Resp. at 13; Pl. Mot. at 15 n.2 ("[Plaintiff] has limited knowledge of this proceeding and takes no position regarding the lawfulness of these subsequent Article XX proceedings.").

Without contest from Plaintiff, the Court finds that the 2022 Rehearing was a genuine *de novo* trial which vindicated Rodriguez-Serrano's Section 101(a)(5)(C) rights, regardless of any

---

[6]  *Haas*, 832 F. Supp. at 287; *see also Perry*, 656 F.2d at 539 ("There is no claim that the members of the [*de novo* trial] were biased or had prejudged the appellants case, and the proceedings before it were recorded verbatim. As an untainted trial *de novo*, the proceedings before the Joint Council cured any prior deprivation of appellants' right to a full and fair hearing.").

[7]  *Goodman*, 742 F.2d at 784–85; *Monaco v. Smith*, No. 00 CIV. 5845 (RMB), 2004 WL 203009, at *7–8 (S.D.N.Y. Feb. 2, 2004); *Catlett*, 69 F.3d at 259.

[8]  *Snyder*, 175 F.3d at 690–91; *Monaco*, 2004 WL 203009, at *7.

[9]  The Court previously dismissed Plaintiff's Section 401(e) claim for a violation of Rodriguez-Serrano's Section 101(a)(5)(A) rights (i.e., "written specific charges").  *See* (ECF No. 21) at 9–11.

potential bias at the 2020 Hearing.  At the rehearing, Local 568 took every necessary step (at least as identified by caselaw) to create a genuinely impartial rehearing of the facts and issues leading to Rodriguez-Serrano's punishment.  The 2022 Rehearing consisted of an entirely new panel of decision-makers, and nothing in the record suggests these members were biased or were Rodriguez-Serrano's political opponents.[10]  Rodriguez-Serrano was apprised of his right to "challenge any member of the committee for cause"[11] and his opportunity "to present evidence, call witnesses . . . and cross examine witnesses" in both May and June of 2022.  Rehearing Tr. at 53.[12]  He was also afforded the right to representation.  May 26 Notice at 2.

Moreover, the 2022 Rehearing was, truly, a "rehearing" as opposed to an appeal.  At the beginning of the proceeding, Rodriguez-Serrano's charges and the applicable constitutional provisions were read onto the record in full.  Rehearing Tr. at 3–9.  The member bringing the charges then explained that he would "endeavor to prove all relevant aspects of the charges" instead of simply justifying the original panel's decision.  *Id.* at 15.  And the member did just that, calling witnesses and discussing the facts underlying the charges over the next two hours.  *See generally id.*    Thereafter, the Trial Committee members rendered factual findings and

---

[10]  (ECF No. 27-30) (hereinafter "Rehearing Tr.") at 1 (listing "Martin Roman, David Eivers and Peter Rodriguez" as the Trial Committee Members at the 2022 Rehearing, none of whom were present at the 2020 Hearing, *see* (ECF No. 27-13) at 1).  Despite briefing on the issue, Plaintiff does not suggest any of these members were biased against Rodriguez-Serrano in any manner.

[11]  In fact, a May 26, 2022 notice apprising Rodriguez-Serrano of the 2022 Rehearing suggests that his ability to contest panel members at the 2022 Rehearing was even *greater* than the Local 568 Constitution might generally provide.  *See* (ECF No. 27-29) (hereinafter "May 26 Notice") at 2 ("Out of an abundance of respect to the full and fair hearing requirement, and on a non-precedent setting basis, the IAC will permit you to submit disputes over the procedures of selecting the Trial Committee directly to the International Committee on Appeals.").

[12]  The transcript confirms that the Trial Committee discussed their various efforts—including the above-discussed notices, an email and a July 7, 2022 phone call—to apprise Rodriguez-Serrano of the Rehearing.  Rehearing Tr. at 10–14.

recommendations without reference to the 2020 Hearing, (ECF No. 27-32) ("Rehearing Findings"), and the Local 568 Executive Board—composed of all new members from the 2020 Hearing—voted to accept those findings.  *See* (ECF No. 27-33) ("Post-Rehearing Notice").  To summarize, nothing before the Court indicates that the 2022 Rehearing was anything but a true, *de novo* trial of Rodriguez-Serrano for his actions in 2020.  *See McFadden v. Int'l Longshoremen's Ass'n, AFL-CIO*, 829 F.2d 36 (4th Cir. 1987) ("The record is devoid of evidence or even a suggestion that the ACD Committee was biased or prejudiced, or subject to any improper influence, or that any members of the Committee were not fully qualified to serve. Since there was a 'trial de novo, the proceedings before the [ACD Committee] cured any prior deprivation of appellant's right to a full and fair hearing.'") (citing *Perry*, 656 F.2d at 1244–45).

Perhaps the most salient fact the Court relies on when reaching this conclusion is the 2022 Rehearing's total lack of reference to the 2020 Hearing.  Unlike so many of the other authorities discussed above,[13] the Court has no reason to believe the 2022 Rehearing's Trial Committee members relied on any evidence, testimony or argument presented at the 2020 Hearing.  In fact, at the outset of the 2022 Rehearing, the members engaged in the following colloquy:

> **Mr. Rosen**:  Before you do that, I want to quickly ask, as I have read these documents, and as the Committee is aware of its responsibility under the Constitution, the charges are the same as those which were dealt with by the Executive Board two years ago, but this is a completely new trial --
> **Mr. Lieberman**:  This is a completely new trial.
> **Mr. Rosen**:  -- and you will endeavor to prove all relevant aspects of the charges?
> **Mr. Lieberman**:  I absolutely will. *There will not be anything brought up from the previous trial in today's hearing whatsoever*, and all of the questioning for Brother Catucci will be in reference to material that was not brought forth during the first trial.

---

[13]  *See, e.g.*, *Goodman*, 742 F.2d at 785; *Snyder*, 175 F.3d at 690–91; *Tincher,* 520 F.2d at 856.

Rehearing Tr. at 14–15 (emphasis added).  The transcript and findings also confirm the veracity of Lieberman's final statement: neither document contains a reference to the 2020 Hearing other than the above colloquy.  *See generally* Rehearing Tr.; Rehearing Findings.  In short, the Trial Committee's total renunciation of the 2020 Hearing fortifies the conclusion that the 2022 Rehearing was indeed a "trial *de novo*," thereby curing any taint from the former proceeding. *Perry*, 656 F.2d at 539; *Snyder*, 175 F.3d at 690–91.

It is of no consequence that Rodriguez-Serrano chose to boycott the second set of proceedings, even if he felt that Local 568's membership might be biased against him.  Rodriguez-Serrano was granted every procedural protection afforded by Article XX of the Local 568 Constitution, yet chose not to avail himself of those protections.  The mere fact that those protections were offered contributes to this Court's finding of a genuine trial *de novo*.  *See Rosario*, 605 F.2d at 1244 ("If there was any doubt about the [biased] nature of the new proceeding, appellees had ample opportunity to clarify the matter. Instead they chose to boycott the proceeding. While their doubts about the Union's sincerity may be understandable, their failure to respond, either by accepting the offer or by asking the court's assistance to insure that a genuine full and fair trial Ab initio would be held, is not.").

The Court also finds that, because the Local 568 Executive Board returned a guilty verdict and imposed a retroactive penalty after the 2022 Rehearing, Rodriguez-Serrano is not entitled to the relief he seeks.  Plaintiff argues Rodriguez-Serrano is entitled to void and conduct anew the December 15, 2021 election.  *See* Pl. Mot. at 14–15 ("The sole statutory remedy for a violation of the LMRDA is specific – a new election conducted under the supervision of the Secretary."); *see also* 29 U.S.C. § 482(b).  Plaintiff's theory, however, improperly assumes that a violation still exists.  On July 27, 2022, after the trial *de novo*, a representative of the Executive Board informed

11

Rodriguez-Serrano that he had once again been found guilty. *See* Post–Rehearing Notice at 1–2. The letter also informed Rodriguez-Serrano that his penalty would be "suspen[sion] from participating in union affairs *until the initial three years bad standing penalty would have been expired*." *Id.* at 2 (emphasis added). This penalty was properly applied, as the 2022 Rehearing appears to have been duly held under Article XX of the Local 568 Constitution and Plaintiff provides no argument to the contrary. *See* (ECF No. 27-1) at 55–57; Pl. Mot. at 15 n.2 ("[Plaintiff] has limited knowledge of this proceeding and takes no position regarding the lawfulness of these subsequent Article XX proceedings."). And the penalty itself is specifically phrased to be retroactive, relating back to the date Rodriguez-Serrano's original penalty was imposed in July of 2020. Post–Rehearing Notice at 2; *see also* (ECF No. 29-21) (informing Rodriguez-Serrano that his three-year ineligibility to run for office began on July 31, 2020).

The sequence of operative events is therefore as follows. Rodriguez-Serrano was found guilty for the second time in July of 2022. That penalty was retroactive, beginning on July 31, 2020. Accordingly, on December 15, 2021—the day of the election—Rodriguez-Serrano was not in good standing and ineligible to run for office. Rodriguez-Serrano now argues that the December 15 election should be voided. Yet because he received a proper hearing in 2022, which concluded that he was not in good standing on December 15, 2021, Local 568 did not err in denying Rodriguez-Serrano's candidacy for that election period.

In so holding, the Court necessarily finds that Rodriguez-Serrano's inability to participate in elections after the 2020 Hearing was not a "special injury" which could not be cured by the 2022 Rehearing. In *Perry*, the Ninth Circuit held that "special injury" arising from improperly applied penalties between the original tainted hearing and the properly held *de novo* hearing might not be cured by the latter proceeding. *See Perry*, 656 F.2d at 539 n.4 (citing *Rosario*, 605 F.2d at 1244–

45). Yet the Ninth Circuit declined to provide an express definition of such injury where none was alleged by the plaintiff nor apparent from the record. *Id.* The same is true here. Plaintiff in the instant proceedings does not allege that Rodriguez-Serrano's inability to participate in the December 2021 election is an injury uncurable by the 2022 Rehearing; in fact, Plaintiff takes no position at all on this point. *See* Pl. Resp. at 13; Pl. Mot. at 15. And regardless, the Court finds that no such special injury is apparent from the record. Because the 2022 Rehearing once again determined that Rodriguez-Serrano's 2020 penalties were properly applied, he was not actually injured by his inability to participate in the 2021 election, regardless of the 2020 decision-makers' potential bias. Post–Rehearing Notice at 1–2.

As an aside, the Court acknowledges both the rarity of the issue before it and the rarity of its own conclusion. In its review of federal jurisprudence on whether a *de novo* trial might cure a former tainted proceeding under Section 101(a)(5)(C), the Court identified less than a dozen cases which deal with the issue in a substantive capacity. Most of those cases conclude that, while some ethereal notion of a *de novo* trial might cure a tainted proceeding, the specific one at issue did not have a curative effect for some reason or another. *See, e.g.*, *Snyder*, 175 F.3d at 690–91 (incorporation of the tainted proceeding's record); *Haas*, 832 F. Supp. at 287 (political opponents serving as the *de novo* trial's judges); *Goodman*, 742 F.2d at 784–85 (record indicated the supposed "retrial" was actually an appeal); *Monaco*, 2004 WL 203009, at *7 (member not properly informed of their rights to call witnesses or to have the charges against them specified). Yet the facts at bar avoid <u>every</u> pitfall identified by this Court in its review of the jurisprudence: the members adjudicating Rodriguez-Serrano's *de novo* trial repudiated the former proceeding's record; there is no indication that the new members were his political opponents; Rodriguez-Serrano was duly notified of the trial and his rights on at least two occasions; and the 2022 Rehearing record quite

13

clearly demonstrates a full trial on the merits, as opposed to an appeal.  Under the circumstances, the Court sees no reason why such a line of jurisprudence exists if not to be employed when the moment arises.

The Court's conclusion also avoids unnecessary interference with internal union affairs. The LMRDA evinces a clear congressional policy that "the courts should respect the autonomy of unions in determining punishable offenses and in disciplining their members."  *Goodman*, 742 F.2d at 783 (citing *Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers, AFL-CIO v. Hardeman*, 401 U.S. 233, 244 (1971)) ("Our inquiry then, is not into the substance of the charges against [the aggrieved member], but into the fairness of the proceedings against him."). Here, the Court only determines that any potential bias against Rodriguez-Serrano at the 2020 Hearing was cured by an untainted 2022 Rehearing with the same verdict.  In doing so, the Court evades the far more imposing step of voiding a years-old election and requiring the conduct of that election anew; such a solution is perfectly consistent with congressional intent.  *See, e.g., McLaughlin v. Lodge 647, Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths Forgers & Helpers, AFL-CIO*, 876 F.2d 648, 652 (8th Cir. 1989);[14] *Usery v. Int'l Org. of Masters, Mates & Pilots, Int'l Mar. Div., ILA, AFL-CIO*, 538 F.2d 946, 950–51 (2d Cir. 1976) ("We turn, therefore, to 'the practicality' of the situation and whether equity commands a remedy different from that ordered by the District Court. We have concluded that, in the circumstances, the action of the

---

[14] "Allowing a district court to make an independent evaluation of the need for the remedy proposed by the Secretary [i.e., a voided election] does not disturb the balance struck by Congress. First, it prevents the Secretary from infringing the union's right to self-government when an intrusion is unwarranted. Second, it allows the court to fashion a remedy to fit the needs of affected union members in each case. Finally, by recognizing a union's ability to remedy its own mistakes, the court furthers the larger public interest in union democracy." *Id.*

Secretary in demanding a [re]election was arbitrary, and that the acquiescence by the court in the Secretary's demand cannot be sustained.").

In sum, the Court finds that the 2022 Rehearing sufficiently vindicated Rodriguez-Serrano's Section 101(a)(5)(C) right to a "full and fair hearing," regardless of any bias present at the 2020 Hearing. Because the 2022 Rehearing properly imposed a retroactive penalty preventing Rodriguez-Serrano's participation in elections for three years beginning on July 31, 2020, the Court holds that Rodriguez-Serrano is not entitled to the new election which he seeks.

## IV.      CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Defendant's Motion for Summary Judgment (ECF No. 26) is GRANTED, and Plaintiff's Motion for Summary Judgment (ECF No. 28) is DENIED. The Clerk of Court is INSTRUCTED to CLOSE this case. All pending motions, if any, are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this _6th_ day of June, 2023.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c:      All counsel of record

15