**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
Case No. 22-cv-21644-KMM

LORI CHAVEZ-DEREMER, Secretary of Labor,
United States Department of Labor,

     Plaintiff,

  v.

LOCAL 568, TRANSPORT WORKERS UNION
OF AMERICA, AFL-CIO,

     Defendant.

_____/

## **DECLARATION OF JANICE MELENDEZ**

I, Janice Melendez, am the Acting Chief of the Division of Enforcement, Office of Labor-Management Standards ("OLMS"), United States Department of Labor ("Department"). The Department supervised an election for the offices of President, First Vice President, Second Vice President, Recording Secretary, Secretary Treasurer, and Executive Board Members (4) of Local 568 of the Transport Workers Union ("TWU") of America ("Local 568"), which was held on December 13, 2024 pursuant to the parties' Settlement Agreement filed with this Court on March 13, 2024. The Department now certifies to the Court that the supervised election complies with Title IV of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 481.

OLMS received one pre-election protest and five post-election protests. OLMS investigated all protests and resolved them prior to certifying the election, as described below.

### A. Election Process

The Pre-Election Conference was held on September 17, 2024. At this meeting, the rules for the conduct of the election were established and a general time frame of election-related activities was discussed. All interested parties were invited to attend. In accordance with Local

568's Bylaws, Hans Roncallo, Robert Rodriguez, Oliver Chatel, and Sandra Sarria were appointed to the Election Committee; Roncallo served as the Election Committee Chairman.

Article VIII, Section 2(e) of the Local 568 Bylaws requires the Local 568 officers and Executive Board to hire an election contractor to conduct their elections and "choose the most cost efficient and effective method provided by the contractor to conduct a thorough election." Local 568 contracted with YesElections to conduct the December 13, 2024 election. Consistent with past practice, and in consultation with their attorney, Local 568 chose to conduct the supervised election by mail ballot. No members opposed conducting a mail ballot election at any point prior to the election.

Local 568 posted several notices in the union hall, at worksites, and online asking members to update their mailing address in anticipation of the upcoming election. These notices were posted on the following dates in the following locations: September 20, 2024 (Local 568 website and Facebook group); September 25, 2024 (union hall); September 26, 2024 (union bulletin boards located throughout Miami International Airport); September 27, 2024 (union bulletin boards located at Ft. Lauderdale International Airport, Palm Beach International Airport, Tampa International Airport, and Jacksonville International Airport).

On September 20, 2024, Local 568 members were notified of the process for submitting nominations for the supervised election. Nominations were due on October 25, 2024. A candidates' meeting was held both virtually and in-person on October 30, 2024. The election rules were provided to all attendees physically present for the candidates' meeting and were also emailed to all candidates on the same date.

YesElections retained the services of MVS Mailers to print, prepare, and mail the ballot packages for the election. YesElections established an October 31, 2024 deadline for Local 568

to provide the mailing list. A total of 2,692 ballot packages, including election notices, were sealed and mailed to Local 568 members on November 14, 2024 and November 15, 2024.[1] To be tallied, voted ballots were required to be received at the designated post office box by 11:00 AM on December 13, 2024.

In addition to being included in the ballot packages, the election notice was also posted on November 14, 2024 on Local 568's website, in the Local 568 Facebook group, in the union hall, and on union bulletin boards located at Miami International Airport, Ft. Lauderdale International Airport, Plam Beach International Airport, Tampa International Airport, and Jacksonville International Airport. The notice stated,

> Members, including new members, who do not receive a ballot by November 30, 2024, may request a ballot by contacting the Election Committee in person at 5395 NW 36th Street, Miami Springs, FL 33166, or by telephone at (305) 874-2788 x 112, or via e-mail at ElectionCommittee@twolocal568.org. Monday through Friday from 8:30 AM to 4:30 PM.

The election notice further provided,

> If you make a mistake, lose your ballot and/or material which accompanied your ballot, you may request a duplicate ballot by contacting the Election Committee in person at 5395 NW 36 Street, Miami Springs, FL 33166, by telephone at (305) 874-2788 x 112, or via email at ElectionCommittee@twolocal568.org, Monday through Friday 8:30 AM to 4:30 PM.

Local 568 mailed a total of 275 replacement ballot packages.[2] These replacement ballots were sent for a variety of reasons: (1) members requested a duplicate ballot; (2) Local 568 remailed undeliverable ballots; and (3) members updated their address via email or the Local 568

---

[1] There were 2,677 ballots printed prior to the sealing and mailing of ballot packages. However, there were an additional fifteen members who either changed their mailing address after October 31, 2024 or were new members not included on the mailing list Local 568 provided MVS Mailers on October 31, 2024. Therefore, an additional fifteen ballots were printed, and fifteen ballot packages were sealed on November 14, 2024. Due to the minimal number of fifteen envelopes, these ballot packages were required to be mailed by the United States Postal Service ("USPS") Teller who had already left for the day after the packages were sealed. Accordingly, MVS Mailers double-sealed the packages and placed them in the USPS Teller Office, which is locked every night. These fifteen ballot packages were mailed the next day, November 15, 2024.

[2] This includes the fifteen ballot packages that were mailed on November 15, 2024. *See* n. 1, supra.

website. Replacement ballot requests were handled promptly and on a rolling basis. All replacement ballots that were sent out during the course of the election were mailed over eight separate occasions, and at least one member sent a replacement or duplicate ballot on each of those dates voted in the election.

A total of 142 ballot packages were returned as undeliverable between November 14, 2024 and December 13, 2024. The Election Committee made efforts to obtain current mailing addresses for all members associated with these ballot packages. Those efforts included calling members, requesting union stewards to obtain updated addresses from members at their respective airports, requesting updated addresses from the employer, and obtaining addresses of record from TWU International. If the Election Committee was unable to obtain a current mailing address, the Election Supervisor obtained the member's most recent address using CLEAR;[3] the Election Supervisor then submitted a request to YesElections to have a replacement ballot package sent to the newly obtained address. 116 replacement ballots were mailed to members whose ballots were initially returned as undeliverable. 117 members requested duplicate ballots; 50 of these 117 members voted in the election.

At 11:00 AM on December 13, 2024, the Election Supervisor, an OLMS Investigator, and Election Committee members Rodriguez and Chatel picked up 996 voted ballot packages from the designated post office box. The voted ballot packages were sealed in a storage bin and the Election Supervisor transported the packages to the tally location, the Miami Springs Country Club, Royal Poinciana Room, 650 Curtiss Parkway, Miami Springs, Florida 331166. The tally began at 12:00 PM; there was one observer present. YesElections scanned the barcodes of the outer envelopes to determine if the voter was eligible to vote; of the 996 ballot packages

---

[3] CLEAR is a software platform that can provide a collection of public and proprietary records.

returned, 989 were returned by eligible voters.[4] YesElections, OLMS, and the Election

Committee opened these 989 ballot packages. Two secret ballot envelopes were empty and did

not contain a voted ballot, and one ballot was voided due to identifying marks. YesElections then

stacked and scanned the remaining 986 ballots to tally the votes. The following election results

were announced to those present immediately after the tally and were subsequently posted on

Local 568's website and Facebook group, at the union hall, and on union bulletin boards

throughout Miami International Airport, Ft. Lauderdale International Airport, Palm Beach

International Airport, Tampa International Airport, and Jacksonville International Airport.

| Office | Candidate | Votes | Margin |
|---|---|---|---|
| President | **Luis Rodriguez** | 285 | 54 |
| | Carlos Garcia | 231 | |
| | Tommy Rogers | 218 | |
| | Lonnie Lewis | 124 | |
| | Fred Harvey | 111 | |
| Frist Vice President | **Manny Lorenzana (I)** | 251 | 3 |
| | Jimmy Gonzalez | 248 | |
| | Sergio Benitez | 241 | |
| | Michael Ferretti | 224 | |
| Second Vice President | **Freisy Ciriaco** | 330 | 5 |
| | Tammy Lagman | 295 | |
| | Ron Ware | 201 | |
| | Richard Desrouleaux | 114 | |
| Recording Secretary | **Larry Bushley** | 275 | 36 |
| | Arturo Robinson | 239 | |
| | Bob Norman | 127 | |
| | Zimbalist Chalk | 116 | |
| | Herberto The Lav guy Ramirez | 109 | |
| | Martin Roman | 82 | |
| Secretary Treasurer | **Josue Josh Gibson** | 269 | 19 |
| | A.C. Castillo | 250 | |
| | Willy Gonzalez | 236 | |
| | Kris Tinerella | 158 | |
| Executive Board Members (4) | **Glen Mora (I)** | 246 | |
| | **Jose Olivares** | 241 | |
| | **Joe Catucci** | 226 | |
| | **Tony Oakafor** | 207 | 8 |

---

[4] Seven ballot packages were returned by members who were not current in their dues as of December 13, 2024.

| | | | |
|---|---|---|---|
| | Kevin Starling | 199 | |
| | Cecil Big Wil Williams | 183 | |
| | Martin Gunny Castro | 158 | |
| | Rafael Rafy Diaz | 158 | |
| | Moya Atkins | 158 | |
| | John Whitehead | 154 | |
| | Wesley Bailey | 151 | |
| | John Gorski | 147 | |
| | Sean Alexander | 147 | |
| | Anthony Thorpe | 138 | |
| | Jose Ramos | 133 | |
| | Dale Sunagel | 131 | |
| | Gabriel Gaby-Velez | 123 | |
| | Joe Rodriguez | 117 | |
| | Marlon Buckner | 113 | |
| | Ricky Brown | 103 | |
| | Eric Espaillat | 75 | |
| | Rafael Veloz | 73 | |
| | Wilfredo Goofy Rodriguez | 69 | |
| | Carlos Viteri | 62 | |
| | Dan The Family Man Brennan | 60 | |
| | Mark Hunter | 38 | |
| | Pedro Iglesias | 30 | |

**Bold** denotes winner
(I) denotes incumbent

Between December 16, 2024 and December 18, 2024, the Election Supervisor and the Election Committee received six requests from unsuccessful candidates for a recount. On December 19, 2024, OLMS and the Election Committee conducted a recount for the races of First Vice President and Executive Board Members.[5] The recount was held at the union hall; there were six observers present. The voted ballots were sorted and counted using the stack method.[6] Although there was a slight variation in the number of votes per candidate, there was no change in the results:

---

[5] These were the only two races for which unsuccessful candidates specifically requested a recount.

[6] The stack method is a ballot counting system in which two-person teams count ballots by separating them into stacks based on the votes cast for each officer position.

| Office | Candidate | OLMS Recount | OLMS Margin |
|---|---|---|---|
| First Vice President | **Manny Lorenzana (I)** | 251 | 3 |
| | Jimmy Gonzalez | 248 | |
| | Sergio Benitez | 241 | |
| | Michael Ferretti | 223 | |
| Executive Board Members (4) | **Glen Mora** | 248 | |
| | **Jose Olivares** | 241 | |
| | **Joe Catucci** | 229 | |
| | **Tony Oakafor** | 209 | 9 |
| | Kevin Starling | 200 | |
| | Cecil Big Wil Williams | 180 | |
| | Martin Gunny Castro | 161 | |
| | Rafael Rafy Diaz | 164 | |
| | Moya Atkins | 159 | |
| | John Whitehead | 157 | |
| | Wesley Bailey | 151 | |
| | John Gorski | 148 | |
| | Sean Alexander | 149 | |
| | Anthony Thorpe | 140 | |
| | Jose Ramos | 134 | |
| | Dale Sunagel | 133 | |
| | Gabriel Gaby-Velez | 120 | |
| | Joe Rodriguez | 114 | |
| | Marlon Buckner | 117 | |
| | Ricky Brown | 103 | |
| | Eric Espaillat | 77 | |
| | Rafael Veloz | 72 | |
| | Wilfredo Goofy Rodriguez | 66 | |
| | Carlos Viteri | 67 | |
| | Dan The Family Man Brennan | 61 | |
| | Mark Hunter | 42 | |
| | Pedro Iglesias | 33 | |

**Bold** denotes winner
(I) denotes incumbent

## B. Election Protests

The election rules provided that any member in good standing may protest the supervised election to the Election Supervisor via email at any time before, during or within ten days after the election. OLMS received a total of six election protests. The Department investigated the

allegations in each protest as described below. Although there were six separate election protests, which were each investigated, in multiple instances these protests contained identical allegations.

*December 2, 2024 Pre-Election Protest*

Allegation: A candidate contacted a member of the Election Committee through personal text messages to assist members that had not received ballots in violation of the election rules.

Response: Section 401(c) of the LMRDA prohibits disparate candidate treatment, and Section 401(e) requires a union to conduct its election of officers in accordance with the union's constitution and bylaws. 29 U.S.C. §§ 481(c), (e). The investigation revealed that the candidate did not solicit the updated address information from members but rather forwarded information he received from members. Initially, the candidate told these members to call the Election Committee; however, these members, who worked the night shift, notified the candidate they were unable to reach anyone because they were calling the union hall during off hours. Nothing in the LMRDA, the Department's regulations, or Local 568's Constitution and Bylaws prohibits a candidate from personally communicating with the Election Committee to update members' address information. Additionally, the investigation did not reveal that this candidate was treated more favorably than any other candidate in the election as a result of the events alleged. Accordingly, this does not constitute a violation of the LMRDA.

*December 18, 2024 Post-Election Protest*

Allegation: The union denied members the opportunity to vote because numerous members did not receive ballots.

Response: Section 401(e) of the LMRDA requires that every member have the opportunity to vote in an election; accordingly, unions are required to make reasonable efforts to update members' mailing addresses for purposes of mailing ballots. *See* 29 U.S.C. § 481(e). The

investigation found the Election Committee made efforts to update the membership address list prior to the mailing of the ballots and throughout the election process. These efforts included posting reminders in the union hall, at worksites, and online instructing members to update their mailing addresses in preparation for the election. On November 14, 2024, over 2,600 ballots were mailed to the last known home address of each member; only 142 of these ballots were returned as undeliverable, and the union was able to mail replacement ballots to 116 of these 142 members. Additionally, members who did not receive a ballot by November 20, 2024, or members who otherwise needed a duplicate ballot, were notified they could request a ballot by contacting the Election Committee. A total of 117 members requested duplicate ballots; nearly half of these 117 members received duplicate ballots and voted in the election. The union insured that duplicate and replacement ballot requests were handled promptly and on a rolling basis. Notably, all duplicate and replacement ballots that were sent out during the course of the election were mailed on eight separate dates, and at least one member sent a duplicate or replacement ballot on each of those dates voted in the election. The investigation established that this allegation does not constitute a violation of the LMRDA.

Allegation: The protesting member was denied the opportunity to vote because he did not receive a duplicate ballot even though he requested one.

Response: The Department's investigation revealed that on December 4, 2024, one postal business day after the Election Supervisor emailed the replacement ballot request to YesElections, the protesting member was mailed a replacement ballot to the address on record with the union. The union promptly responded to the member's request, providing him with an opportunity to vote in the election. As such, there was no violation of the LMRDA.

*December 19, 2024 Post-Election Protests*

Allegation: Candidates used private cell phone numbers of Election Committee members to provide updated member addresses in circumvention of the election rules.

Response: Section 401(c) of the LMRDA prohibits disparate candidate treatment, and Section 401(e) requires a union to conduct its election of officers in accordance with the union's constitution and bylaws. 29 U.S.C. §§ 481(c), (e). The investigation revealed that the candidate did not solicit the updated address information from members but rather forwarded information he received from members. Initially, the candidate told these members to call the Election Committee; however, these members, who worked the night shift, notified the candidate they were unable to reach anyone because they were calling the union hall during off hours. Nothing in the LMRDA, the Department's regulations, or Local 568's Constitution and Bylaws prohibits a candidate from personally communicating with the Election Committee to update members' address information. Additionally, the investigation did not reveal that this candidate was treated more favorably than any other candidate in the election as a result of the events alleged. Accordingly, this does not constitute a violation of the LMRDA.

Allegation: The union denied members the opportunity to vote because: (a) Numerous members did not receive ballots, received them late, or received them with insufficient time to complete and return them; (b) Duplicate ballots did not make it to members in good standing; (c) Ballots were mailed to incorrect addresses, and while some were corrected the timing was inadequate for ballots to reach members in time.

Response: Section 401(e) of the LMRDA requires that every member have the opportunity to vote in an election; accordingly, unions are required to make reasonable efforts to update members' mailing addresses for the purpose of mailing ballots. *See* 29 U.S.C. § 481(e). The

investigation found the Election Committee made efforts to update the membership address list prior to the mailing of the ballots and throughout the election process. These efforts included posting reminders in the union hall, at worksites, and online instructing members to update their mailing addresses in preparation for the election. On November 14, 2024, over 2,600 ballots were mailed to the last known home address of each member; only 142 of these ballots were returned as undeliverable, and the union was able to mail replacement ballots to 116 of these 142 members. The Election Committee made efforts to obtain current mailing addresses for all ballot packages returned as undeliverable by calling members, requesting union stewards obtain updated addresses from members at their respective airports, requesting updated addresses from the employer, and obtaining addresses of record from TWU International. If the union and the Election Committee were unable to obtain a current mailing address, the Election Supervisor obtained the member's most recent address using CLEAR. The Election Supervisor then requested YesElections mail a replacement ballot to the newly obtained address if the member had not already initiated a replacement ballot request.[7] Additionally, members who did not receive a ballot by November 20, 2024, or members who otherwise needed a duplicate ballot, were notified they could request a ballot by contacting the Election Committee. A total of 117 members requested duplicate ballots; nearly half of these 117 members received duplicate ballots and voted in the election. The union insured that duplicate and replacement ballot requests were handled promptly and on a rolling basis. Notably, all duplicate and replacement ballots that were sent out during the course of the election were mailed on eight separate dates, and at least one member sent a duplicate or replacement ballot on each of those dates voted in the election. The

---

[7] The 116 replacement ballots mailed to members whose ballot packages were initially returned as undeliverable does not include the number of replacement ballots mailed to members who initiated a replacement ballot request on their own.

union made reasonable efforts to keep its mailing list current and employed an effective process to manage duplicate and replacement ballots, ensuring members received duplicate and replacement ballots as soon as possible. As such, there was no violation of the LMRDA.

Allegation: The union denied members the opportunity to vote because a printing issue delayed the mailing of the ballots by two days, significantly shortening the time members had to receive, complete, and return their ballots.

Response: The LMRDA does not dictate when ballots must be mailed in a mail ballot election but does require members be mailed notice of the election no less than fifteen days prior to the election and be given a reasonable opportunity to vote. *See* 29 U.S.C. § 481(e); *see also* 29 C.F.R. § 452.94. The investigation determined ballot packages were printed and mailed on November 14, 2024, one day after the November 13, 2024 mailing date indicated in the election rules. Although mailed one day later than anticipated, members were still provided more than fifteen days' notice of the election. The investigation determined that members had ample time to receive, complete, and return their ballots by the December 13, 2024 deadline, and the protestor did not identify any members who claimed there was insufficient time to return their voted ballot. There was no violation of the LMRDA.

Allegation: The union failed to comply with Article VIII, Section 2(e) of the Local 568 Bylaws, which requires the ballot company to pick the most effective method to conduct a thorough election.

Response: Section 401(e) of the LMRDA requires a union to conduct its election of officers in accordance with the union's constitution and bylaws. 29 U.S.C. § 481(e). Article VIII, Section 2(e) of the Local 568 Bylaws provides,

> The Officers and Executive Board will hire an election contractor to run our 2015 election and following subsequent elections. . . . The Board and Officers will hire an outside

company to conduct our election cycle. The Board and Officers will choose the most cost efficient and effective method provided by the contractor to conduct a thorough election.

The Local 568 Executive Board, in consultation with their attorney, selected YesElections to conduct the December 13, 2024 election via mail ballot, as has been the local's past practice. Moreover, the protesting member did not present any specific evidence that the December 13, 2024 election was conducted in a manner that was "ineffective" or not "cost efficient", nor was any such evidence uncovered during the Department's investigation. Accordingly, this allegation does not constitute a violation of the LMRDA.

*December 20, 2024 Post-Election Protest*

Allegation: The union failed to mail duplicate ballots to members in good standing, denying these members the opportunity to vote.

Response: Section 401(e) of the LMRDA requires that every member have the opportunity to vote in an election. 29 U.S.C. § 481(e). The investigation found that members who did not receive a ballot by November 20, 2024, or members who otherwise needed a duplicate ballot, were notified they could request a ballot by contacting the Election Committee. A total of 117 members requested duplicate ballots; nearly half of these 117 members received duplicate ballots and voted in the election. The investigation confirmed that the union employed an effective process to manage duplicate ballot requests and ensure members received duplicate ballots as soon as possible. As such, there was no violation of the LMRDA.

Allegation: Article VIII, Section 2(e) of the Local 568 Bylaws requires the ballot company to pick the most effective method to conduct a thorough election.

Response: Section 401(e) of the LMRDA requires a union to conduct its election of officers in accordance with the union's constitution and bylaws. 29 U.S.C. § 481(e). Article VIII, Section 2(e) of the Local 568 Bylaws provides,

> The Officers and Executive Board will hire an election contractor to run our 2015 election and following subsequent elections. . . . The Board and Officers will hire an outside company to conduct our election cycle. The Board and Officers will choose the most cost efficient and effective method provided by the contractor to conduct a thorough election.

The Local 568 Executive Board, in consultation with their attorney, selected YesElections to conduct the December 13, 2024 election via mail ballot, as has been the local's past practice. Moreover, the protesting member did not present any specific evidence that the December 13, 2024 election was conducted in a manner that was "ineffective" or not "cost efficient", nor was any such evidence uncovered during the Department's investigation. Accordingly, this allegation does not constitute a violation of the LMRDA.

*December 23, 2024 Post-Election Protest*

Allegation: Members were denied the opportunity to vote in that certain named members allegedly requested duplicate ballots with ample time to vote but did not receive ballots.

Response: Section 401(e) of the LMRDA requires that every member have the opportunity to vote in an election. *See* 29 U.S.C. § 481(e). The investigation found that members who did not receive a ballot by November 20, 2024, or members who otherwise needed a duplicate ballot, were notified they could request a ballot by contacting the Election Committee. A total of 117 members requested duplicate ballots; nearly half of these 117 members received duplicate ballots and voted in the election. The union insured that duplicate and replacement ballot requests were handled promptly and on a rolling basis. Notably, all duplicate and replacement ballots that were sent out during the course of the election were mailed on eight separate dates, and at least one member sent a duplicate or replacement ballot on each of those dates voted in the election. Additionally, the investigation revealed that all fourteen members the protestor identified were mailed duplicate ballots. More specifically:

- Two requested replacement ballots on December 2, 2024 and were subsequently mailed replacement ballots on December 4, 2024.
- Two requested replacement ballots on December 3, 2024 and were subsequently mailed replacement ballots on December 4, 2024.
- Five had replacement ballot requests sent on their behalf to YesElections on December 3, 2024 and were subsequently mailed replacement ballots on December 4, 2024.
- Two requested replacement ballots on December 4, 2024 and were subsequently mailed replacement ballots on December 9, 2024.
- Two had replacement ballot requests sent on their behalf to YesElections on December 4, 2024 and were subsequently mailed replacement ballots on December 9, 2024.
- One had a replacement ballot request sent on their behalf to YesElections on December 5, 2024 and was subsequently mailed a replacement ballot on December 9, 2024; this member voted in the election.

The investigation confirmed that the union employed an effective process to manage duplicate ballot requests and ensure members received duplicate ballots as soon as possible. As such, there was no violation of the LMRDA.

The Department has concluded from its investigation of these protests that Local 568's December 13, 2024 election for the offices of President, First Vice President, Second Vice President, Recording Secretary, Secretary Treasurer, and Executive Board Members (4) conducted under the Department's supervision, complied with Title IV of the LMRDA and was conducted, insofar as lawful and practicable, in accordance with Local 568's Constitution and Bylaws. Therefore, the results of this supervised election should be certified.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 11th day of April, 2025, in Washington, D.C.

Janice Meléndez, Acting Chief
Division of Enforcement
Office of Labor-Management Standards
United States Department of Labor